IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES REED HAMMOND, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 16-1054 |
| | ) | |
| COMMISSIONER, | ) | |
| SOCIAL SECURITY, | ) | (GALLAGHER, M.J.) |
| | ) | |
| Defendant. | ) | **[FILED VIA ECF]** |

PLAINTIFF'S BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Patrick J. Best, Esq.
18 N. 8th St.
Stroudsburg PA 18360
570-424-1117
Fax: 570-424-2814


September 8, 2016

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ……………………………………………......... 3

II.  SUMMARY OF MEDICAL EVIDENCE ……………………………………….. 5

III. ARGUMENTS ……………..…………………………………………………….. 8

    1. The ALJ violated Mr. Hammond's procedural due process and did not
       provide a full and fair hearing…………………………………….............. 8

        a. The ALJ violated HALLEX § I-2-7-1 in failing to hold a
           supplemental hearing as requested by the claimant …………8

        b. The ALJ violated HALLEX § I-2-4-25 in failing to develop
           good cause for failure to appear at the oral hearing ………… 11

    2. Substantial evidence does not support the ALJ's finding that toxic
       encephalopathy is a not a medically determinable impairment …....….. 13

    3. Substantial evidence does not support the ALJ's finding that migraines
       are a non-severe impairment .………………………………….............. 15

    4. The Court should remand pursuant to "Sentence Six" of Section 405(g)
       to consider new and material evidence …………………………....… 19

IV. CONCLUSION…………………………………………………………………… 22

---

## EXHIBIT LIST

A.   Request for supplemental hearing submitted by Mr. Hammond to the hearing
    office on November 6, 2014.

B.   November 4, 2014 report of Dr. Ziem.

C.   Fax cover sheet evidencing the submission of Dr. Ziem's November 4, 2014
    report to the Appeals Council on August 25, 2015.

D.   Return receipt dated August 31, 2015 evidencing the Appeals Council's receipt of
    Dr. Ziem's November 4, 2014 report.

## I.   STATEMENT OF THE CASE

This case is an appeal under 42 U.S.C. § 405(g) of a final administrative decision of Defendant, the Commissioner of Social Security ("Commissioner"), which denied Plaintiff, James Reed Hammond, Jr., Child Disability Benefits under Title II of the Social Security Act. On October 4, 2010, he was initially denied by the State Agency. (Tr. 53).[1] Plaintiff timely requested Reconsideration on November 2, 2010. (Tr. 57). He was denied Reconsideration on January 24, 2012. (Tr. 64). Plaintiff timely requested an administrative hearing on February 26, 2012. (Tr. 66).

Plaintiff initially waived his right to personally appear and testify at a hearing held before an Administrative Law Judge ("ALJ"). (Tr. 75). Nevertheless, the Administrative Law Judge ("ALJ") scheduled a hearing for September 25, 2014. (Tr. 36). On August 22, 2014, after receiving the scheduling notice, Mr. Hammond called the hearing office. (Tr. 47). In that call he stated that "he did not understand the reason for coming to the hearing since he was not going to pay a representative because his mom did a great job gathering documents." (Tr. 47). The individual responsible for noting the call indicated that "now he understands that he does not need a representative; he will attend the hearing with his mother." (Tr. 47). The Plaintiff did not attend the hearing on September 25, 2014.

On October 28, 2014, the ALJ sent a proffer letter to Plaintiff indicating that she had secured additional evidence that she proposed be entered into the record. (Tr. 29). The letter indicated several actions which the Plaintiff may take as a result of this proffer, including the right to request a supplemental hearing. (Tr. 29). On November 6,

---

[1] References to (Tr. __) correspond to the Transcript of Proceedings filed by the Defendant.

2014, Mr. Hammond did request a supplemental hearing. (Exhibit A).[2]  The ALJ neither explicitly granted nor denied Plaintiff's request for a supplemental hearing, but no supplemental hearing was held.

On January 30, 2015, the ALJ used the well-known five-step sequential evaluation to decide that the Plaintiff was not disabled. (Tr. 18-28) 20 C.F.R. § 404.1520 (sequential evaluation).[3]

At step one, the ALJ found that Mr. Hammond had not engaged in substantial gainful activity since July 17, 2002, his alleged onset date. (Tr. 23). 20 C.F.R. § 404.1520(b) (step one).

At step two, the ALJ determined that Mr. Hammond had, as "medically determinable impairments", migraine headaches, attention deficit hyperactivity disorder, depression, and anxiety. (Tr. 23). The ALJ determined that Mr. Hammond had, as "non-medically determinable impairments", toxic encephalopathy, an unnamed condition related to biopersistent chlorinated pesticides, and reactive airway disease. (Tr. 24). The ALJ then determined that Mr. Hammond did not have any "severe" impairments. 20 C.F.R. § 404.1520(c) (step two). Thus, the ALJ ended the sequential evaluation and determined that Mr. Hammond was not disabled. (Tr. 28).

On March 7, 2016, the ALJ's decision became the Commissioner's final decision subject to judicial review when the Appeals Council denied Mr. Hammond's request for review. (Tr. 7). 20 C.F.R. § 422.210(a). Mr. Hammond then initiated this civil action. 42 U.S.C. § 405(g).

---

[2] For reasons unknown to the Plaintiff, this request is not in the administrative record. As a result, Plaintiff has annexed it to this Brief as Exhibit A along with the fax confirmation page evidencing that it was sent to the ALJ on November 6, 2014.
[3] Before undertaking the sequential evaluation in this case, the ALJ noted that Mr. Hammond had not attained age 22 as of July 17, 2002, the alleged onset date. (Tr. 23.). (Therefore, his insured status was not at issue.)

Substantial evidence is the standard of review. 42 U.S.C. § 405(g); See also Mascio v. Colvin, 780 F. 3d 632, 634 (4th Cir. 2015). Substantial evidence is more than a mere scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 522, 564-65 (1988).

## II.    SUMMARY OF MEDICAL EVIDENCE

Mr. Hammond has a history of abdominal pain dating back to 1998. (Tr. 210).  At that time, he had reported having abdominal issues "over the course of many years." (Tr. 210). These abdominal issues recur throughout the medical records. (See e.g., Tr. 279, 295, 298, 300).

He also has a history of respiratory issues including persistent cough which dates back to 1999. (Tr. 216). He had what appeared to be recurrent episodes of bronchitis and perhaps one episode of the flu. (Tr. 216). He has a history of hospitalization related to this cough. (Tr. 216). Related complaints, such as sore throat, appear throughout the medical records. (See e.g., Tr. 289, 295, 298).

Mr. Hammond had several issues while in high school related to his impairments. (Tr. 308). This includes repeated and persistent absences. (Tr. 308). He ultimately dropped out of school as a result of his inability to maintain regular attendance. (Tr. 432).

It was not until Mr. Hammond saw Dr. Grace Ziem in July of 2002 that the etiology of Mr. Hammond's abdominal pain, persistent cough, and cognitive difficulties became known. (Tr. 389, 431). Dr. Ziem diagnosed Mr. Hammond with toxic encephalopathy resulting from organophosphate (pesticide) exposure. (Tr. 431). He was in good health prior to this exposure, but following exposure developed multiple

neurologic symptoms. (Tr. 431). His symptoms included chronic fatigue, chronic respiratory inflammation and abdominal stria. (Tr. 431). Other symptoms include constant headaches, severe diarrhea, frequent vomiting, bodily aching, and episodes of shaking and tingling in his hands. (Tr. 432). Neurologic symptoms include difficulty thinking clearly, muscle twitching, muscle spasm, forgetfulness, poor balance, and tremor. (Tr. 433).

On examination, Dr. Ziem dimmed the lights in the office which resulted in an improvement in Mr. Hammond's headaches. (Tr. 433). This, coupled with Mr. Hammond's frequent nausea led Dr. Ziem to conclude that the headaches are part of a migraine pattern. (Tr. 433). Mr. Hammond had significant abnormalities on Romberg testing and a notably unsteady heel to toe walking. (Tr. 433). He had a slight resting tremor on the right hand and mild on the left using a 3 ½ by 5 inch piece of paper on the extended hand. (Tr. 433). Neurocognitive testing showed probable mild reduction in attention span and concentration, at least mild reduction in ability to conduct complex mental tasks and at least mild reduction in short-term memory. (Tr. 433-434).

Dr. Ziem's report contained eight pages of the laboratory tests and the scientific rationale behind those tests which evidence toxic encephalopathy. (Tr. 434-441). Those tests included adrenal stress index, amino acids, fatty acids, G.I health panel, liver detoxification profile, male hormone panel, minerals, nutritional testing (SpectraCell), osteoporosis, thyroid testing, ELISA/ACT, and organophosphates. (Tr. 434-441). In addition to describing the testing and the scientific rationale, Dr. Ziem references the scientific and medical journals which provide the foundation for the scientific rationale. (Tr. 434-441).

On November 24, 2004, Dr. Ziem opined that due to Mr. Hammond's fatigue, he would not be able to work full time. (Tr. 392).

On October 23, 2009, Mr. Hammond underwent a neurology consultation with Dr. Ansher. (Tr. 738). Dr. Ansher concluded that Mr. Hammond's headaches were likely migraine in origin. (Tr. 739). Dr. Ashner indicates that Mr. Hammond was referred by Dr. York-Jordan with "multiple chemical sensitivity" and chronic headaches. (Tr. 738).

On September 17, 2014, Dr. Ziem completed a medical source statement in which she indicated Mr. Hammond's primary diagnosis was severe, frequent, prolonged disabling migraines. (Tr. 749). Dr. Ziem indicated that toxic encephalopathy was a secondary diagnosis. (Tr. 749). Dr. Ziem opines that as a result of these migraines, their exacerbations, and fatigue, Mr. Hammond would be limited to a range of sedentary work with several non-exertional limitations. (Tr. 750).

On August 20, 2010, Mr. Hammond's blood was tested for mercury and other heavy metals. (Tr. 636). His mercury levels were in the 99th percentile. (Tr. 636). A report was included indicating the symptoms that accompany this level of mercury in the blood including anorexia, numbness and parasthesias, headaches, hypertension, irritability and excitability, and immune suppression. (Tr. 638). This report also confirms that mercury is present in pesticides. (Tr. 638).

## III.   ARGUMENTS

### 1.   The ALJ violated Mr. Hammond's procedural due process and did not provide a full and fair hearing.

The Court should reverse the Commissioner's final decision and remand Mr. Hammond's claim for readjudication because the ALJ violated his right to procedural due process and, as a related matter, did not provide a full and fair hearing. See Wallace v. Bowen, 869 F.2d 187, 191-94 (3d Cir. 1988); see also Souch v. Califano, 599 F.2d 577 (4th Cir. 1979)(requiring a full and fair hearing).

#### a.   The ALJ violated HALLEX § I-2-7-1 in failing to hold a supplemental hearing as requested by the claimant.

The ALJ violated HALLEX § I-2-7-1[4] in failing to hold a supplemental hearing as requested by Mr. Hammond. The HALLEX is the manual of procedure for ALJs and the Appeals Council. It is binding on ALJs. See Social Security Ruling (SSR) 13-2p.

The ALJ held an oral hearing on September 25, 2014 at which Mr. Hammond was not represented. (Tr. 36). On October 28, 2014, the ALJ sent a proffer letter to Plaintiff indicating that she had secured additional evidence that she proposed be entered into the record. (Tr. 29). The letter indicated several actions which the Plaintiff may take as a result of this proffer, including the right to request a supplemental hearing. (Tr. 29). On November 6, 2014, Mr. Hammond did request a supplemental hearing. (Exhibit A).[5]  Despite this request, the ALJ did not hold a supplemental hearing.

---

[4] Available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-1.html (visited September 2, 2016).
[5] For reasons unknown to the Plaintiff, this request is not in the administrative record. As a result, Plaintiff has annexed it to this Brief as Exhibit A along with the fax confirmation page evidencing that it was sent to the ALJ on November 6, 2014.

HALLEX § I-2-7-1 clearly provides that "if the ALJ offered the right to a hearing on the proffered evidence, even in error, the ALJ must grant any request for a supplemental hearing." The ALJ did not grant Plaintiff's request and failed to conduct a supplemental hearing prior to rendering her decision. In so doing, she violated the constitutional principles set forth in <u>Wallace</u>:

> We thus hold that when an [ALJ] chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested.

<u>Wallace</u>, 869 F.2d. at 193; see also <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950). The ALJ also violated the Administrative Procedure Act. See 5 U.S.C. § 556(d) ("A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."). A claimant cannot present his case by oral evidence if the ALJ does not conduct a supplemental hearing. Agency policy is consistent with <u>Wallace</u>. <u>See</u> HALLEX, § I I-2-7-1 (requiring a supplemental hearing if requested).

If the Commissioner argues that the HALLEX is not judicially enforceable, the Commissioner will miss the point. The HALLEX embodies the procedural due process principles found in <u>Wallace</u>, the Constitution (<u>Mullane</u>), and the Administrative Procedure Act. Mr. Hammond does not request that the Court enforce the HALLEX, but <u>Wallace</u>, the Constitution, and 5 U.S.C. § 556(d). <u>Cf</u>. <u>Gallina v. Astrue</u>, No. 09-0654

(RBK), 2010 WL 743921, at *6 (D. N.J. Mar. 4, 2010) (relying on a claimant's due process right, not the HALLEX).

Moreover, if the Commissioner argues that Mr. Hammond waived his right to personally appear at the hearing, again, the Commissioner will miss the point. First, the waiver would have applied only to the initial hearing on September 25, 2014. Mr. Hammond cannot be said to voluntarily and knowingly waive the right to comment on evidence that did not exist at the time the waiver was signed. By attempting to add new evidence to the record and sending a proffer letter after the September 25, 2014 hearing, the ALJ necessarily invoked Plaintiff's right to request a supplemental hearing. See HALLEX § I-2-7-1 ("if the ALJ offered the right to a hearing on the proffered evidence, even in error, the ALJ must grant any request for a supplemental hearing."); see also HALLEX § I-2-1-82 ("Even when a claimant voluntarily and knowingly waives the right to a hearing, the ALJ must still afford the claimant the right to submit written comments, responses to interrogatories, or other evidence.")(citing HALLEX § I-2-5-29).

Second, the administrative record supports a finding that Mr. Hammond revoked the waiver of his right to personally appear. On August 22, 2014, after receiving the scheduling notice, Mr. Hammond called the hearing office. (Tr. 47). In that call he stated that "he did not understand the reason for coming to the hearing since he was not going to pay a representative because his mom did a great job gathering documents." (Tr. 47). The individual responsible for noting the call indicated that "now he understands that he does not need a representative; **he will attend the hearing** with his mother." (Tr. 47)(emphasis added).

The ALJ's procedural due process error was harmful. Despite offering a supplemental hearing and despite Plaintiff's request for a supplemental hearing, the ALJ did not schedule or conduct a supplemental hearing. Rather, the ALJ issued a decision on the record, without hearing. Thus, no plausible argument can be made that the ALJ's procedural due process error was harmless.

In sum, the Court must remand with an order for the ALJ to conduct a supplemental hearing and afford Mr. Hammond to present his case by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. See Wallace, 869 F.2d at 192-94.

### b. The ALJ violated HALLEX § I-2-4-25 in failing to develop good cause for failure to appear at the oral hearing.

In a related issue, the ALJ violated HALLEX § I-2-4-25[6] in failing to develop good cause for failure to appear at the oral hearing. For the reasons set forth above, Mr. Hammond revoked his waiver of his right to personally appear at the September 25, 2014 oral hearing when he communicated to the hearing office that "now he understands that he does not need a representative; **he will attend the hearing** with his mother." (Tr. 47)(emphasis added). Such a revocation of a waiver is consistent with agency policy. See HALLEX § I-2-1-82(Only after a discussion with the hearing office and being informed of his or her rights can the claimant be said to voluntarily and knowingly waive the right to a hearing.) Nevertheless, Mr. Hammond did not appear for the hearing on September 25, 2014.

---

[6] Available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-25.html (visited September 2, 2016).

Because Mr. Hammond revoked his waiver of his right to personally appear at the September 25, 2014 hearing, the ALJ was required to develop "good cause" for Mr. Hammond's failure to appear. See HALLEX § I-2-4-25.  HALLEX § I-2-4-25 provides that if the claimant does not appear for the hearing, the hearing office will:

- Send a Form HA-L90, Request To Show Cause For Failure To Appear, to the claimant and the appointed representative, if any;

- Give the claimant and appointed representative 10 days from the date of the Form HA-L90 to respond; and

- Provide an additional 5 days for mailing time before proceeding.

As the ALJ did not develop good cause, there is no way to discern whether an unforeseeable event occurred that did not provide Mr. Hammond enough time to notify the ALJ and request a postponement before the scheduled hearing. Moreover, because Mr. Hammond was not represented by counsel, the ALJ had a duty to assume a more active role in helping Mr. Hammond develop the record. Craig v. Chater, 76 F. 3d 585, 591 (4th Cir. 1996)(quoting Sims v. Harris,631 F.2d 26, 28 (4th Cir.1980)).

As discussed above, the HALLEX embodies the procedural due process principles found in both Wallace, the Constitution (Mullane), and the Administrative Procedure Act. Mr. Hammond does not request that the Court enforce the HALLEX, but Wallace, the Constitution, and 5 U.S.C. § 556(d). Cf. Gallina v. Astrue, No. 09-0654 (RBK), 2010 WL 743921, at *6 (D. N.J. Mar. 4, 2010) (relying on a claimant's due process right, not the HALLEX).

In sum, the Court must remand with an order for the ALJ to conduct a full and fair hearing and afford Mr. Hammond to present his case by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. See Wallace, 869 F.2d at 192-94.

**2. Substantial evidence does not support the ALJ's finding that toxic encephalopathy is a not a medically determinable impairment.**

The ALJ found that Mr. Hammond's toxic encephalopathy was not a medically determinable impairment. (Tr. 24). In so finding, the ALJ concluded "there are no medical signs or laboratory findings established by medically acceptable clinical or laboratory diagnostic techniques, showing the existence of [this] impairment[]." (Tr. 24). This finding is not supported by substantial evidence for the reasons that follow.

While the ALJ summarily concluded that "there are no medical signs or laboratory findings established by medically acceptable clinical or laboratory diagnostic techniques, showing the existence of [this] impairment[]", the ALJ failed to discuss, much less consider, any of the objective medical evidence or clinical findings referenced by Dr. Ziem. (See e.g., adrenal stress index, amino acids, fatty acids, G.I health panel, liver detoxification profile, male hormone panel, minerals, nutritional testing (SpectraCell), osteoporosis, thyroid testing, ELISA/ACT, and organophosphates. (Tr. 434-441)). Similarly, the ALJ failed to discuss, much less consider, Mr. Hammond's blood-mercury levels in the 99th percentile (Tr. 636).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the

record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Without such an analysis, subsequent reviewers, including this Court, cannot "'tell if significant probative evidence was not credited or simply ignored.'" Burnett v. Commissioner, 220 F.3d 112, 122 (3d Cir. 2000) (quoting Cotter v. Harris, 642 F.2d 700, 704–05 (3d Cir. 1981)). When evaluating the medical evidence of record, the ALJ should "'explicitly indicate the weight given to all of the relevant evidence.'" Perkins v. Apfel, 101 F. Supp.2d 365, 375 (D. Md. 2000)(quoting Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)); see also Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an explanation from the ALJ, "it is simply impossible to tell whether there was substantial evidence to support the determination").

    Because the ALJ's findings are in direct conflict with the evidence of record, namely Dr. Ziem's objective testing evidencing toxic encephalopathy, the ALJ's conclusory statement that toxic encephalopathy is not a medically determinable impairment cannot be supported by substantial evidence without an explanation as to how that conflict was resolved. Remand is required.

    There is another way to understand the ALJ's error. The ALJ substituted her opinion for that of Mr. Hammond's treating physician with regard to whether a medically determinable impairment was present. The ALJ rejected the opinion of Dr. Ziem, a specialist in chemically-induced illness (Tr. 630), without persuasive contradictory evidence. See Bryant v. Shalala, 882 F. Supp. 544, 547-49 (S.D. W.Va. 1995)("A treating physician's opinion can only be disregarded if there exists in the record 'persuasive contradictory evidence.'). "[A]  treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001); see also 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ cites no contradictory evidence, but rather, sets forth a mere conclusion that "there are no medical signs or laboratory findings established by medically acceptable clinical or laboratory diagnostic techniques, showing the existence of [this] impairment[]". Such a conclusion, without explanation, is insufficient to support a finding that Dr. Ziem's opinion was not supported by medically acceptable clinical or laboratory diagnostic techniques. <u>See</u> <u>Smith v. Heckler</u>, 782 F.2d 1176, 1181 (4th Cir. 1986) (explaining that the ALJ needs to filter through the evidence and explain "why" the ALJ made the decision). This is especially true when considering the plethora of objective medical evidence set forth by Dr. Ziem. (<u>See</u> <u>e.g.</u>, Tr. 433 showing significant abnormalities on Romberg testing, unsteady heel to toe walking, slight resting tremor on the right hand and mild on the left, significant number stria on the lateral abdomen). For this reason too, remand is required.

### 3. Substantial evidence does not support the ALJ's finding that migraines are a non-severe impairment.

While the ALJ concluded that Mr. Hammond's migraines were "medically determinable", the ALJ concluded that the migraines were "non-severe". (Tr. 28). Thus, the ALJ ended the sequential evaluation and determined that Mr. Hammond was not disabled. (Tr. 28). This finding is not supported by substantial evidence. Moreover, the ALJ's analysis is factually flawed in that the ALJ states that "no source has opined that the claimant has a severe medically determinable impairment." (Tr. 25). This is simply

untrue. As set forth below, Dr. Ziem clearly opines that Mr. Hammond's migraines are both medically determinable and severe.

Before a claimant can be found disabled under Social Security regulations, he or she must first establish the existence of a "severe" impairment which is expected to "result in death" or has lasted or is expected to last "for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and § 404.1520(a). To be "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" are defined as "those abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of "basic work activities" provided in the regulations include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Significant limitation of a claimant's ability to do basic work activities is not to be viewed solely in medical terms, but also in functional terms. Jones v. Schweiker, 551 F.Supp. 205, 208 (D.Md.1982). "An impairment can be considered as `not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984). The establishment of "severity" is ordinarily not a difficult hurdle for the claimant to clear. Albright v. Commissioner of Social Sec. Admin., 174 F.3d 473, 478 n. 1 (4th Cir. 1999)(citing

Evans, 734 F.2d at 1014).

With respect to whether a claimant's impairments are severe at step two of the sequential analysis, "if an adjudicator is unable to determine clearly the effect of an impairment or the combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with a not severe evaluation step. Rather, it should be continued." Cottrill v. Apfel, 102 F. Supp. 2d 627, 634 (D. Md. 2000)(quoting SSR 85-28).

The ALJ afforded "great weight" to the diagnosis of migraine headaches noting that Dr. Ziem "has treated the claimant for a long period of time." (Tr. 26). However, despite this finding, the ALJ afforded no weight to the functional limitations opined upon by Dr. Ziem in her September 17, 2014 medical source statement. (Tr. 26). In this medical source statement, Dr. Ziem opines that as a result Mr. Hammond's migraines, their exacerbations, and fatigue, Mr. Hammond would be limited to a range of sedentary work with several non-exertional limitations. (Tr. 750). Dr. Ziem explained the basis for this opinion in that exertion mobilizes biopersistant chlorinated pesticides which result in extreme debilitating headaches lasting one to two days. (Tr. 750).

Additionally, the ALJ failed to discuss or consider Dr. Ziem's opinions regarding Mr. Hammond's attention span, concentration, ability to conduct complex mental task, and short term memory loss.(Tr. 433-434)(discussing the results of neurocognitive testing). Rather, the ALJ concluded that Mr. Hammond had no limitations in the area of concentration, persistence, or pace based primarily on the September 24, 2014 consultative examination report. (Tr. 27-28). The ALJ did not weigh Dr. Ziem's opinions regarding cognitive deficits against this report or in any way resolve the conflicts with

17

this report. To the contrary, the ALJ concluded that "[t]here is no evidence of record that he has any significant thought disorder or cognitive deficits in memory, attention, or concentration. . ." (Tr. 28).

When evaluating the medical evidence of record, the ALJ should "'explicitly indicate the weight given to all of the relevant evidence.'" Perkins, 101 F. Supp.2d at 375(quoting Gordon, 725 F.2d at 235). Here the ALJ failed to do so. Without this explanation, the ALJ's decision cannot be supported by substantial evidence.  See Smith, 782 F.2d at 1181 (explaining that the ALJ needs to filter through the evidence and explain "why" the ALJ made the decision).

At a minimum, remand is required so that the ALJ may properly weigh Dr. Ziem's opinion and resolve any and all conflicts regarding concentration limitations; however, remand is required on a separate basis in that the evidence of record establishes that Mr. Hammond's migraines are severe. Substantial evidence does not support a finding that Mr. Hammond's combination of impairments is only a "slight abnormality". The Court should therefore remand with instructions to find Mr. Hammond's migraines to be "severe" and to continue the five step sequential evaluation. See Cottrill, 102 F. Supp. 2d at 636 (remanding with instructions to find Plaintiff's urinary tract infections to be "severe" and to continue the five step sequential evaluation).

**4.   The Court should remand pursuant to "Sentence Six" of Section 405(g) to consider new and material evidence.**

The sixth sentence of 42 U.S.C. § 405(g) is known as "Sentence Six." It conveys authority to judicial courts to remand to the ALJ for review of additional evidence if the evidence is "material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Attached as Exhibit B is a report by Plaintiff's treating physician, Dr. Ziem, dated November 4, 2014. For reasons unknown to Plaintiff, this report is not part of the administrative record. This report was initially provided to the ALJ prior to the issuance of the unfavorable decision. (See Exhibit A)("My treating physician, Dr. Grace Ziem, has provided a report which is attached.").

Upon the receipt of the ALJ's decision, Mr. Hammond retained the undersigned to file a Request for Review with the Appeals Council. On August 25, 2015, the undersigned re-submitted the November 4, 2014 report from Dr. Ziem. (Exhibit C). In addition to this fax, the undersigned sent the report by certified mail, return receipt requested. The Appeals Council received the report (and other evidence) on August 31, 2015. (Exhibit D). For reasons unknown to the Plaintiff, these submissions to the Appeals Council were not made part of the administrative record and the Appeals Council did not discuss their submission in the denial of review.

The evidence is "new" because it was not considered by the ALJ or by the Appeals Council. This is clear from the fact that it is not discussed in the ALJ decision, but also was not part of the administrative record.

This evidence is material because it is probative of Mr. Hammond's disability status, and is not duplicative of other medical records but conveys additional information about his status. Moreover, the information provided by Dr. Ziem directly conflicts with several findings of the ALJ.

"Good cause" exists for failure to incorporate this evidence into the record because it was not Plaintiff who failed to incorporate this evidence into the record. Plaintiff does not know why or how the evidence was not incorporated into the record by the ALJ or by the Appeals Council. That being said, it could not be Plaintiff's fault because Plaintiff took reasonable care to ensure that the evidence was properly submitted. Plaintiff first submitted the evidence to the ALJ on November 6, 2014. (Exhibit A). Plaintiff then re-submitted the evidence to the Appeals Council on August 25, 2015. (Exhibits C, D).

Failure to consider this evidence is not harmless because it would likely change the ALJ's decision had the ALJ considered this evidence. The report contains several key pieces of information which would likely change the ALJ's decision:

- First, Dr. Ziem discussed additional objective testing which supports her diagnosis of toxic encephalopathy. (Exhibit B, p. 2)(He had a reduced vibratory perception at 128 cps.).

- Second, Dr. Ziem outlines additional functional limitations caused by Mr. Hammond's recurring migraines. (Exhibit B, p. 1)(He also had recurring headaches of migraine pattern with light and sound intolerance and associated with nausea and/or dizziness.)

- Third, Dr. Ziem explains that while Mr. Hammond attempted to attend college, he often missed classes because of his headaches. This is particularly important because the ALJ used Mr. Hammond's college attendance as a basis to conclude that he has no cognitive deficits. (Tr. 28). If Mr. Hammond attended college, but as a "disabled student" and with accommodations pursuant to the Americans with Disabilities Act, it cannot be said that this is evidence that he has no cognitive deficits. (Exhibit B, p. 1)([H]e registered as a disabled student to have more flexibility with scheduling but was still sufficiently missing at least 20% of these classes and often attended feeling sick.)

- Fourth, Dr. Ziem outlined that her neurologic examination used U.S. government recommended methods for evaluation of neurotoxicity. This evidence is particularly relevant given that the ALJ found toxic encephalopathy was not medically determinable. (Exhibit B, p. 2)(U.S. government recommended methods for evaluation of neurotoxicity were used.) Use of the U.S. government's recommended methods of neurotoxicity is highly probative of whether a medically determinable impairment is present.

- Finally, Dr. Ziem clearly outlines Mr. Hammond's "work capacity." This explains which "basic work activities" are affected by Mr. Hammond's impairments and clearly conflicts with the ALJ's findings that Mr. Hammond does not have a "severe" impairment. Dr. Ziem explained that Mr. Hammond has difficulty thinking clearly, learning new tasks, and

remembering and following instructions. His fatigue and lack of endurance
are likely to interfere with repetitive manual work. His headaches often last
many hours. (Exhibit B, p. 2).

Therefore, no plausible argument can be made that the ALJ's failure to consider
this evidence was harmless. Remand is required on this basis.

Plaintiff has therefore established all three prongs of Sentence Six necessary to
support a remand. The evidence is "new", "material", and "good cause" exists for failure
to incorporate it into prior proceedings. Remand pursuant to Sentence Six is therefore
required in the event the Court does not remand on other grounds.


IV.     **CONCLUSION**

It is therefore respectfully requested that this Honorable Court grant a reversal in
this case, thereby making her eligible to receive Disability Benefits. In the alternative,
Plaintiff requests remand with instructions to:  (1) conduct a full and fair hearing and
issue a new decision accordingly; (2) find Mr. Hammond's toxic encephalopathy a
medically determinable impairment and continue with the five step evaluation; (3) find
Mr. Hammond's migraines to be a "severe" impairment and proceed with the five step
evaluation; (4) consider Dr. Ziem's 2014 report; and, (5) issue a new decision based on
substantial evidence and proper legal standards.


Dated: September 8, 2016

Respectfully submitted,
s/ Patrick J. Best, Esq.
Patrick J. Best
18 N. 8th St.
Stroudsburg PA 18360
570-424-1117